In the Matter of Sidney **BELKIN**, Debtor.

**UNITED STATES** of America, Appellant,

v.

Sidney **BELKIN**, Appellee.

No. 16275.

United States Court of Appeals Sixth Circuit.

March 31, 1966.

Robert C. McDiarmid, Atty., Dept. of Justice, Washington, D. C., for appellant, John W. Douglas, Asst. Atty. Gen., Sherman L. Cohn, Atty., Dept. of Justice, Washington, D. C., George E. Hill, U. S. Atty., Detroit, Mich., on the brief.

Charles Anderson, McShane & Bowie, Grand Rapids, Mich., on the brief, for appellee.

Before WEICK, Chief Judge, and O'SULLIVAN and CELEBREZZE, Circuit Judges.

CELEBREZZE, Circuit Judge.

The material facts in this case are not disputed. On March 22, 1963, Sidney Belkin, hereinafter referred to as Debtor, filed a wage earner petition pursuant to the provisions of Chapter XIII of the Bankruptcy Act, hereinafter referred to as the Act, 11 U.S.C., Sections 1001 through 1086. The petition disclosed debts of $6,647.04 and assets of $2,676.56. One of the debts shown by the schedule was owing to the Michigan National Bank. This debt had been insured under the provisions of Title I of the National Housing Act, 12 U.S.C., Section 1702. Acting under this provision, the Michigan National Bank assigned its claim and note to the United States on March 21, 1963 in return for the Government's payment of its insurance obligation. The United States filed a timely proof of claim for $796.56, asserting priority of payment in full by virtue of 11 U.S.C., Section 104(a) and 31 U.S.C., Section 191. The unsecured creditors accepted a plan which provided for the payment of the necessary costs and expenses of administration, and for the payment of secured debts in accordance with the terms of the security instruments which were excluded from payments under the plan. The plan further provided that the unsecured creditors of the debtor were to be paid 25% of their debts, within 120 days from the confirmation of the plan, in full and complete payment

and satisfaction of such debts. The Referee in Bankruptcy ruled as follows:

"The claim of the United States of America, based upon an assignment made before the commencement of the Chapter XIII Wage Earner Proceedings, of an obligation of the Debtor to a banking institution on a Federal Housing Administration insured loan is entitled to priority of payment under Section 64a(5)[1] as a debt due the United States and is entitled to be paid before other unsecured creditors are paid but is not entitled to be paid more than other unsecured creditors. As the confirmed plan of arrangement provides for payment of 25% in full of all unsecured creditors, which plan is binding on all creditors under Section 657, the United States is entitled to receive only 25% in full of its unsecured claim against the Debtor, Sidney Belkin."

The District Court, in its decision reported at 232 F.Supp. 850 (1964), affirmed the decision of the Referee that the United States was entitled to payment of only 25% of its claim and reversed as to the allowance of priority payment. The United States appeals and contends it is entitled to full payment on a priority basis.

The questions presented are mainly of statutory interpretations, since the material facts are not in dispute.

The District Court, relying on In re Bailey, 188 F.Supp. 47 (1960) rejected the contention of the United States that 11 U.S.C., Section 1059[2] entitled the United States to be paid in full a debt accorded priority by 11 U.S.C., Section 104

(a).[3] Relying on 11 U.S.C., Section 1002[4] of the Act which says in part that "the provisions of Chapters 1 to 7 * * of this Title shall, insofar as they are not inconsistent or in conflict with the provisions of this Chapter, apply in proceedings under this Chapter", and 11 U.S.C., Section 1046,[5] which provides that a wage earner plan "shall include provisions dealing with unsecured debts generally, upon any terms", the District Court held that Section 104(a) was inconsistent with 11 U.S.C., Section 1046 and consequently under Section 1002 was inapplicable. Citing 10 Collier on Bankruptcy, Section 28.02 which says that all unsecured debts must be dealt with in the same way, the District Court held that if all unsecured creditors must be dealt with in the same way, then no unsecured creditor, including the United States, is entitled to a priority position.

Standing alone, there may be a conflict between 11 U.S.C., Section 1046 of Chapter XIII and 11 U.S.C., Section 104(a) of Chapter VII. However, 11 U.S.C., Section 1059, Chapter XIII, provides in part *"that there shall be first paid in full * * * (6) the debts entitled to priority, in the order of priority"* as provided *by subdivision (a) of Section 104 of this Title.* (Emphasis added)

Subdivision (a) of Section 104 provides as follows:

" * * * (5) [D]ebts owing to any person, including the United States, who by the laws of the United States in [sic] entitled to priority * * *."

 This conflict, if one exists, is removed by the clear and specific incorporation of Section 104(a), Title VII, into

1. 11 U.S.C., Section 104(a) (5).

2. 11 U.S.C., Section 1059, Section 659 of the Bankruptcy Act, provides in part: "In advance of distribution to creditors, there shall first be paid in full, out of the moneys paid in by or for the debtor, and the order of payment shall be— * * * (6) The debts entitled to priority, in the order of priority, as provided by subdivision (a) of Section 104 of this Title."

3. 11 U.S.C., Section 104(a), Section 64(a) of the Bankruptcy Act, provides in part:

"(a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be * * * (5) debts owing to any person, including the United States, who by the laws of the United States in [sic] entitled to priority * *."

4. Section 602 of the Bankruptcy Act.

5. Section 646 of the Bankruptcy Act.

Section 1059 of Title XIII. The explicit language contained in Section 1059 allowing priority and payment in full prevails over the general provisions of Section 1046. If Congress had not intended to make an exception to the general provisions of Section 1046, there would have been no need to incorporate by reference the provisions of Section 104(a) (5) into Section 1059 of the wage earners plan. We hold that Section 104(a) (5) and Section 1059(6) require that claims entitled to priority under a law of the United States must be paid in full prior to payments to creditors under a Chapter XIII wage earners plan.

The only question remaining is whether the United States is entitled to a priority. Any priority allowed to claims of the United States must be founded upon statute. As was said by Mr. Justice Story in the early case of United States v. State Bank of North Carolina, 1832, 31 U.S. (6 Pet.) 29, 35, 8 L.Ed. 308;—referred to by the Court in United States v. Anderson, 334 F.2d 111 (C.A. 5, 1964):

"The right of priority of payment of debts due to the government, is a perogative of the crown well known to the common law. It is founded not so much upon any personal advantage to the sovereign, as upon motives of public policy, in order to secure an adequate revenue to sustain the public burdens, and discharge the public debts. The claim of the United States, however, does not stand upon any sovereign perogative, but is exclusively founded upon the actual provisions of their own statutes. The same policy which governed in the case of the royal perogative, may be clearly traced in these statutes; and as that policy has mainly a reference to the public good, there is no reason for giving to them a strict and narrow interpretation. Like all other statutes of this nature, they ought to receive a fair and reasonable interpretation, according to the just import of their terms."

The Bankruptcy Act of 1898, as originally enacted, was construed by the Supreme Court to give priority only to "all taxes legally due * * * to the United States," and not to afford priority for ordinary debts due to the United States. Davis v. Pringle, 1924, 268 U.S. 315, 317–319, 45 S.Ct. 549, 550, 69 L.Ed. 974.

By the amendment of 1926 (44 Stat. at L. 662, Chap. 406), Congress repealed the effect of that decision by adding the words now in 11 U.S.C., Section 104(a) (5) which specifically include the United States within the definition of the word "persons" to whom a priority status was given. So at the present time, by reason of the provisions of Section 104(a) (5) as amended in 1926, all claims of the United States, whether tax or non-tax, are given priority in conventional bankruptcy proceedings under Chapters I to VII of the Act, just as they were under the 1867 Act until it was repealed. The Chapter XIII wage earners plan of course is not a conventional bankruptcy. However, 11 U.S.C., Section 104 is expressly made applicable to Chapter XIII proceedings by 11 U.S.C., Section 1059.

As previously noted, debts which have a priority under Section 104(a) (5), referred to in Section 1059, Chapter XIII, are "debts owing to any person, including the United States, who by the laws of the United States in [sic] entitled to priority". The law which entitles the United States to a priority is 31 U.S.C., Sections 191–193. Section 191 provides:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

Whether or not the United States is entitled to assert a priority depends

upon a determination of the debtor's insolvency, as manifested in Section 191. Not only must a debtor be unable to meet his debts as they mature, but also the insolvency must be disclosed in one of three modes: (1) a voluntary assignment, (2) the attachment of the effects of an absconding, concealed, or absent debtor, or (3) the commission of an act of bankruptcy. United States v. State of Oklahoma, 261 U.S. 253, 43 S.Ct. 295, 67 L.Ed. 638 (1923); Bramwell v. United States Fidelity & Guaranty Co., 269 U.S. 483, 46 S.Ct. 176, 70 L.Ed. 368 (1926) and United States v. Emory, 314 U.S. 423, 62 S.Ct. 317, 86 L.Ed. 315 (1941); 3 Collier on Bankruptcy, Section 64.502.

■ The filing of a Chapter XIII petition by the Debtor, while insolvent, was sufficient to invoke the priority of the United States as a voluntary assignment under 31 U.S.C., Section 191.

■ The Chapter XIII petition filed by the Debtor showed he was insolvent. His debts totaled $6,647.04 while his assets totaled $2,676.56. An assignment by operation of law satisfies the requirement of 31 U.S.C., Section 191 as a voluntary assignment. Bramwell v. United States Fidelity & Guaranty Co., supra; United States v. Butterworth-Judson Corp., 269 U.S. 504, 46 S.Ct. 179, 70 L.Ed. 380 (1926). When the Debtor files a Chapter XIII petition, he submits all of his non-exempt property and his future earnings to the jurisdiction of the Bankruptcy Court. 11 U.S.C., Section 1011.[6] The ultimate control of the Debtor's non-exempt property passes from the Debtor to the Court on the filing of the petition. 11 U.S.C., Section 1033(4) provides for the appointment of a Trustee to receive

and distribute all the money paid under the plan. Even though the Debtor may have possession of the property, he may not deal with the property as he wishes since the property is under the control of the Bankruptcy Court. Here the possession and control of the Debtor's property passed to the Trustee and to the Bankruptcy Court to at least the same extent as in King v. United States, 379 U.S. 329, 85 S.Ct. 427, 13 L.Ed.2d 315 (1964), in which it was conceded that Section 191 applied in a Chapter XI proceeding.

We note that the understanding of the United States that it would continue to enjoy 31 U.S.C., Section 191 priority in cases filed under the new Chapters X, XI, XII and XIII had been graphically called to the attention of the sponsoring committee, which had acted on that understanding. In the process of revision, the original language added by Congress in 1926 to overrule Davis v. Pringle, supra, was inadvertently left out of an early draft of the 1938 Act. The provision for priority for the United States was reinstated, however, on the suggestion of Arthur H. Kent, Assistant General Counsel for the Treasury, who also called the attention of the Committee to the understanding of the United States that the provision would apply to the newly added chapter:

"By its amendment [of section 64][7] in 1926, Congress specifically determined that debts of the United States should be entitled to priority *and the necessity for this priority is even greater today in view of the extension of the provisions of the Bankruptcy Act to include reorganization and arrangements of debtors.*" (Emphasis added)[8]

---

6. 11 U.S.C., Section 1011 provides in part: "Where not inconsistent with the provisions of this chapter, the court in which the petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and his property, wherever located, and of his earnings and wages during the period of consummation of the plan."

7. 11 U.S.C., Section 104.

8. Hearings before the Committee on the Judiciary, House of Representatives, on H.R. 8046, p. 350, 75th Congress, 1st Sess. This exchange is also noted at 3 Collier on Bankruptcy, 14th Ed., p. 64.501 [2.2], n. 8, pp. 2225–2226.

Giving the priority act a liberal construction,[9] we hold that the Debtor here was insolvent, and that there was a voluntary assignment sufficient to precipitate the priority of the United States under 31 U.S.C., Section 191.[10]

Judgment of the District Court is reversed and the case remanded for further proceedings in accordance with this opinion.[11]

9. Bramwell v. United States Fidelity & Guaranty Co., supra and United States v. Emory, supra.

10. United States v. Anderson, 334 F.2d 111 (C.A. 5, 1964) cert. denied, 379 U.S. 879, 85 S.Ct. 147, 13 L.Ed.2d 86, held that non-tax claims of the United States are given priority by 31 U.S.C., Section 191 in Chapter X proceedings. We are aware of the opinion rendered by the Eighth Circuit Court of Appeals in a Chapter XI proceeding and its contrary holding reported in United States v. National Furniture Co., 348 F.2d 390 (1965), but

believe we have followed herein more specifically not only the intent but the directive of Congress. See also King v. United States, supra.

11. We distinguish our finding herein from that of the United States Supreme Court in Perry v. Commerce Loan Company, decided March 7, 1966, 86 S.Ct. 852, in that the Perry decision was based on an extension of time and payment of debts in full, whereas in the present case there is a composition and the Debtor is required to pay only twenty-five percent of his unsecured indebtedness.